**OPPENHEIM, OBERNDORF & CO., Inc., v. PRESIDENT SUSPENDER CO.**

(Court of Appeals of District of Columbia. Submitted November 13, 1924. Decided January 5, 1925.)

No. 1683.

Trade-marks and trade-names and unfair competition ⚖=21—Word "President" held not subject to registration as trade-mark for men's underwear and shirts, in view of opposer's prior use as trade-mark for suspenders.

Word "President" held not subject to registration as trade-mark for men's underwear and shirts, in view of use thereof as trade-mark for suspenders by opposer and predecessor for a long period of time prior to adoption by applicant; men's underwear, shirts, and suspenders being goods of the same descriptive properties.

Appeal from Commissioner of Patents.

Application for registration of trademark by Oppenheim, Oberndorf & Co., Inc., opposed by the President Suspender Company. Opposition sustained, and applicant appeals. Affirmed.

J. E. Cross, of Baltimore, Md., for appellant.

Robert Cushman, of Boston, Mass., and A. V. Cushman, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The appellant, Oppenheim, Oberndorf & Co., Inc., applied for the registration by the Patent Office of the word "President" as its trade-mark for certain articles of clothing. It appeared, however, that in fact it had used the mark only in the sale of men's underwear and men's dress, negligée, and work shirts; its application, therefore, has been treated in the record as if confined to these classes of articles only.

The appellee, the President Suspender Company, a corporation, filed an opposition to the application, based upon two several contentions, to wit: First, that the opposer and its predecessors, long prior to the use of the mark by the applicant, had adopted and continuously used the word "President" as a trade-mark in the manufacture. and sale of suspenders, which it claims are goods of the same descriptive properties as men's underwear and shirts; and, second, that the word "President" is the dominent word of opposer's corporate name, and consequently cannot be registered by another as a trade-mark. The applicant, upon the other hand, contended, first, that the classes of goods above named are not of the same descriptive properties; and, next, that it and its predecessors had adopted and continuously used the word "President" as a trademark for the articles named in the application for a number of years before the opposer was incorporated with the word "President" as part of its corporate name.

The opposition was sustained by concurring decisions in the Patent Office; the decisions, however, being based upon the second ground only, the first ground being disapproved. The applicant has appealed.

The record clearly discloses the fact that the opposer and its predecessors have used the word "President" as a trade-mark in the manufacture and sale of suspenders for a period of time long prior to the adoption of the mark by the applicant; that the mark was registered by opposer's predecessor in the year 1899, and has ever since been in continuous use by them as aforesaid; that under it a business of great magnitude has been built up in the making and selling of suspenders; that large sums of money have been expended in advertising the mark in connection with the opposer's goods; and that it has become an asset of great value in the trade. Moreover, the record sustains the claim that the respective classes of goods in question, to wit, men's underwear and shirts and suspenders, are goods of the same descriptive properties, and that the opposer would be wrongfully injured by the registration of the mark applied for.

As observed by the Commissioner, it is not always easy to determine whether different articles of merchandise are of the same descriptive properties; for such a question raises a number of considerations. One of these is whether the several classes of goods in question are so intimately associated in the popular mind, with reference to their manufacture or marketing, that purchasers in general would be likely to assume and believe that the same trade-mark upon them would naturally imply a common origin. In such case the goods may be said to be of the same descriptive properties, and if the same trade-mark could be adopted by different parties for such classes of goods, a manufacturer of one class, by adopting a trademark used by a manufacturer of another class, could readily palm off his goods as those made or dealt in by the other, thereby unfairly reaping the benefit of the other's advertising and good will. It may be said in general that, if goods are such that the purchasing public, seeing them sold under the same mark, will believe that they have the same commercial origin in point of manufacture or marketing, it follows that they will be regarded as of the same descriptive properties. American Stove. Co. v. Detroit Stove Works, 31 App. D. C. 304; N. Wolf & Sons v. Lord & Taylor, 41 App. D. C. 514; Williams v. Kern & Sons, 47 App. D. C. 441; In re Interrieden Canning Co., 277 F. 613, 51 App. D. C. 214; E–Z Waist Co., v. Reliance Mfg. Co., 286 F. 461, 52 App. D. C. 291.

It fairly appears from the present record, as well as from common knowledge, that suspenders and men's shirts and underwear are alike embraced within the class of men's furnishings. They are frequently manufactured by the same companies, are sold together under the same trade-mark to jobbers, who in turn sell them to the same

class of retail merchants, by whom they are vended by the same clerks in the same trade to the same general class of customers. The articles have become associated together in popular understanding, and are generally regarded as merchandise of the same class. It is natural that, if such goods should bear the same trade-mark, the purchasing public would assume that they had come from the same source. This is made the more probable by the fact, as disclosed by the record, that there are many manufacturers who make and sell men's shirts, underwear, and suspenders, using the same trade-mark alike for the different articles.

We conclude, therefore, that the opposition in this case should be sustained upon the first ground above recited, and the decision of the Commissioner, although not based upon that ground, is affirmed. In view of this conclusion, we need not enter upon a discussion of the second question presented by the record.

The decision is affirmed.