## STERN APPAREL CORPORATION v. RAINGARD, Inc.

United States District Court
S. D. New York, Civil Division.
March 18, 1949.

622

Phillips, Mahoney & Spohr, New York City, Robb & Robb, Cleveland Ohio, John F. Robb and John W. Robb, Cleveland, Ohio, of counsel, for plaintiff.

Charles Sonnenreich, New York City, for defendant.

RYAN, District Judge.

Plaintiff by this action seeks a cancellation of trade-mark Registration No. 190,487 issued October 14, 1924 to the firm of Driesen, Meyer and Oronsky covering mark "Raingard" and subsequently assigned to

defendant; a permanent injunction restraining defendant from using the mark "Raingard" on its products and as part of its corporate name; and an accounting by defendant.

The court has jurisdiction of the claims asserted arising as they do under Sec. 4915, R.S., 35 U.S.C.A. § 63, and because of diversity of citizenship.

Plaintiff is an Ohio corporation with its principal place of business in Cleveland, Ohio; it was incorporated under the name "Arrow Importing Company, Inc.," but by amendment of its certificate changed its name to "Stern Apparel Corporation." In 1941, plaintiff acquired by bill of sale the business, good will and assets and liabilities of its subsidiary, "Stern Hat Company," also an Ohio corporation.

Defendant is a New York corporation with its principal place of business in New York City; its original corporate name was "A. Starr & Co., Inc." which was changed to "Raingard, Inc." by certificate of change filed with the Secretary of State, on August 30, 1944.

"Raingard" or a similar trade-mark has been registered in the Patent Office since 1921. A certificate of registration of the mark "Rayngard" No. 144,958 was issued July 19, 1921 to the United States Rubber Company for use on weather-proof and waterproof coats, and was renewed in 1941. The plaintiff, on May 7, 1945, filed application in the Patent Office to cancel this registration and United States Rubber Company failing to answer the petition, the registration was cancelled by the Commissioner of Patents on August 30, 1945.

Dreisen, Meyer and Oronsky, on May 22, 1924, applied to the Patent Office for registration of the mark "Raingard" for use on outer suits and overcoats, and on October 14, 1924 Registration No. 190,487 was issued to it and which they retained until 1944 when it was purportedly assigned to defendant.

Plaintiff, in about 1934, began the manufacture and sale in intrastate and interstate commerce of raincoats and jackets using on them the mark "Raingard" in combination with other words, such as "Goose-

skin Raingard," "Globe Trotter Raingard," "V-Raingard" and "Royal Scott Raingard." More than $500,000 worth of these articles bearing these marks were sold by plaintiff between 1934 and 1942; but, in 1942 plaintiff was using only the marks "Gooseskin Raingard" and "Globe Trotter Raingard," having abandoned the others. The coats manufactured and sold by plaintiff under the trade-mark "Gooseskin Raingard" were made of silk imported from Japan and natural rubber from Malaya especially processed by the Connecticut division of the E. I. duPont deNemours Co.; the "Globe Trotter Raingard" coats were also made of imported rubber and of cotton cloth especially processed by Alden Co. of Philadelphia. Wartime restrictions imposed by the Government on these materials compelled plaintiff to suspend the manufacture of these articles. The last sale by plaintiff of "Raingard" coats was on October 23, 1942. Plaintiff did, however, in May, June and September, 1944 use the mark "Gooseskin Raingard" in some of its nationally circulated advertisements.

On September 13, 1944, plaintiff filed an application in the Patent Office to register the trade-mark "Raingard." This was rejected because of previous trade-mark registrations No. 144,958 issued to United States Rubber Company and No. 190,487 to Driesen, Meyer and Oronsky.

It was not until July 5, 1944 that defendant obtained a purportedly valid assignment of the mark "Raingard" and effected the change of its corporate name from "A. Starr & Co., Inc." to "Raingard, Inc." Not long after this, plaintiff learned of the use of the trade-mark "Raingard" by defendant and promptly, on August 31, 1944, it notified defendant by letter that it claimed ownership of and the exclusive right to use that mark and protested its use by defendant. It does not appear that before this time defendant had knowledge or notice of prior use of the mark by plaintiff and defendant so stated in its reply letter of September 6, 1944.

With this recital of the history of the mark "Raingard," we come to consider plaintiff's first claim for relief, in which for the second time it seeks to obtain cancellation of registration No. 190,487.

█ Prior to filing this action, Arrow Importing Company, plaintiff's predecessor, filed, on May 16, 1945, a petition with the Commissioner of Patents to cancel renewed registration No. 190,487 issued in 1924 to Driesen, Meyer and Oronsky and purportedly assigned to A. Starr Company. This application was denied by the Examiner of Interferences and his decision dismissing plaintiff's petition was affirmed by the Commissioner of Patents, on appeal. Arrow Importing Co., Inc., v. Driesen, Meyer & Oronsky (Raingard. Inc. assignee, substituted) 74 U.S.P.Q. 66 (1947). The Commissioner stated that plaintiff was not being injured by defendant's use of the mark because at that time plaintiff was not using it. He rejected plaintiff's contention that the reason for its non-use was attributable to wartime restrictions. The Commissioner, following old Monk Olive Oil Co. v. Southwestern Coca-Cola Bottling Co., 118 F.2d 1015, 1019, 28 C.C.P.A., Patents, 1091, held that "in a cancellation proceeding involving a technical trade-mark, use by the petitioner of the mark on or about the time of filing his petition must be established." Since plaintiff had not used the mark since October, 1942, it was denied cancellation. The Commissioner rightly found that the assignment of the trade-mark registration by Driesen, Meyer and Oronsky to defendant's predecessor was void and that it was an assignment in gross. That defendant acquired nothing by the assignment is shown by the facts that it acquired no business or associated good will, no list of customers, no formula of processing and no information as to types of garments, and that the garments made by defendant, after the assignment, were an entirely different product from that covered by the assigned registration. Old Charter Distillery Co. v. Ooms, D.C. 1947, 73 F.Supp 539.

█ The evidence on the trial as to plaintiff's activities since the proceedings before the Commissioner was received on the injunction claim, but temporarily excluded on the cancellation claim. The court, however, has determined that this evidence is

competent on the latter claim and will consider it on all claims. This suit is not an appeal from the Commissioner's decision; it is a trial *de novo* and all competent evidence, old and new, is admissible. Globe-Union, Inc., v. Chicago Telephone Supply Co., 7 Cir., 103 F.2d 722.

The issue in the cancellation claim remains precisely the same as that litigated before the Commissioner: has plaintiff been injured by defendant's use of the mark "Raingard"? The Commissioner's finding that plaintiff was not using the name has been rebutted by evidence of its activities subsequent to the filing of its petition in 1945. The rubber needed by plaintiff in its manufacture did not become available again until after September, 1947. Since then, plaintiff has resumed manufacture and sale of its "Globe Trotter Raingard" raincoats and in the latter part of 1948 had sold about $6,000 worth.

■ The court finds on these facts that plaintiff did not abandon any of its rights to the name "Raingard" during the period of its prevented use from 1942 to 1947. R. H. Macy & Co., Inc., v. Wilmington Hosiery Mills, Inc., 1948, 78 U.S.P.Q. 130; Universal Candy Co. v. A. G. Morse Co., 1924, 54 App.D.C. 388, 298 F. 847.

■ One of the most significant points in this proceeding is that defendant appropriated the precise mark that plaintiff has used–"Raingard"–and applied it to the same products–raincoats. Defendant has also used the mark in its corporate name. These facts make out a clear case of infringement. Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039; Moxie Co. v. Noxie Kola Co. of New York, Inc., D.C., 29 F.Supp. 167. In the latter case it was said, 29 F.Supp. at page 172: "Where, as here, a clear case of infringement of trade mark is shown by a competitor's adoption of a similar name on a product of the same general class, unfair competition naturally results. This is especially so where the infringer employs the offending name as a part of its corporate title."

The one element that was missing in the proceeding before the Commissioner—the use of the trade-mark by plaintiff—having been supplied by the evidence in this suit, plaintiff is entitled to an order directing the Commissioner of Patents to cancel trade-mark registration No. 190, 487, which was renewed to defendant. This result does not in any way reverse the decisions of the Examiner and Commissioner; on this trial we have had the all-important proof of use not in evidence at that time.

We shall consider next plaintiff's claim for injunctive relief.

■ Plaintiff is entitled to a permanent injunction restraining defendant from using the trade-mark "Raingard" on its products, in its corporate name and in connection with its business. Defendant saw plaintiff's advertisement using the mark "Gooseskin Raingard" soon after the former obtained the purported assignment from Driesen, Meyer and Oronsky. Furthermore, on the very next day after defendant changed its corporate name to "Raingard, Inc.," plaintiff notified it of its claim to the mark. Defendant states that it has now a large investment in the mark. This is not at all persuasive because it made these expenditures with full knowledge of plaintiff's claim. It is well settled that registration does not confer upon the registrant substantive rights—only, procedural advantages. Armstrong Paints & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Best & Co. v. Miller, 2 Cir., 167 F.2d 374. Since defendant's rights depend on the assignment and since it obtained nothing by this assignment, it cannot rely on it to establish any rights. The relief given by cancellation proceedings rests primarily on the right of a person to be protected in the reputation and good will of his business. Imperial Cotto Sales Co. v. N. K. Fairbanks Co., 50 App. D.C. 250, 270 F. 686. The facts discussed on the cancellation claim show infringement and entitle plaintiff to the injunction sought.

This brings us to plaintiff's claim for an accounting by defendant.

■ Plaintiff is not entitled to an accounting "for all profits realized through the sale of goods of the nature of those

made and sold by plaintiff bearing the name 'Raingard,' and for all damages sustained by plaintiff on account of the infringement and/or unfair competition." .

Plaintiff has not established that it has been damaged. There has been no evidence adduced to show a "palming-off" of plaintiff's products or the sale of an inferior product by defendant with resultant damage to plaintiff's mark and reputation in the trade. It does appear that defendant's products are made of more costly materials than those used by plaintiff, and that they retail at a substantially higher price. It further appears that plaintiff had not been making "Raingard" products for the greater portion of the time that defendant had been using the name.

"The case is peculiarly one where such damage as has occurred, like that which is still in prospect, is incapable of computation. We see no reasonable probability that any substantial damages could be proved and reduced to dollars and cents with that degree of accuracy that is essential in such a case." Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509, 512.

The following findings of fact and conclusions of law are made:

### Findings of Fact

1. Plaintiff is a corporation organized under the laws of the State of Ohio, having its principal place of business in Cleveland, Ohio, and is a citizen and inhabitant of the State of Ohio.

2. The plaintiff, Stern Apparel Corporation, was formerly named Arrow Importing Company, Inc., and obtained a change of name to Stern Apparel Corporation, by a certificate of amendment filed in the office of the Secretary of State of the State of Ohio. In 1941, Arrow Importing Company, Inc., by bill of sale purchased all assets, liabilities, personal and other property, from its predecessor in business, Stern Hat Company, a corporation.

3. Defendant, Raingard, Inc., is a New York corporation having its principal place of business at 20 E. 12th Street, New York City, and said defendant bore the corporate name of A. Starr & Co., Inc., before changing to its present name.

4. In or about 1934, plaintiff adopted and commenced to use in its business the trade-mark "Raingard," in conjunction with other words, such as "Gooseskin Raingard," "Globe Trotter Raingard," "V-Raingard" and "Royal Scott Raingard," upon raincoats and rain jackets manufactured by it and which were sold by it in intrastate and interstate commerce. Plaintiff's sales of all coats bearing the "Raingard" label are as follows: For the years 1933, $38,641.59; 1934, $60,916.23; 1935, $89,-997.90; 1936, $77,127.18; 1937, $126,175.-47; 1938, $49,095.75; 1939, $42,434.00; 1940, $35,096.25; 1941, $59,293.25; 1942, $16,055.25. Total $594,832.87.

5. The raincoats manufactured and sold by plaintiff under its trade-mark "Gooseskin Raingard" were made of natural rubber imported from Malaya and silk from Japan, especially processed by E. I. duPont deNemours Co. to form the material used in the manufacture of the coats; these coats bearing the mark "Globe Trotter Raingard" were made of natural rubber imported from Malaya and cotton especially processed by Alden Co. to form the material used in their manufacture.

6. Plaintiff discontinued manufacture and sale of raincoats bearing the marks "V-Raingard" in 1934 and "Royal Scott Raingard" in 1937, and has not since those dates resumed the manufacture of those coats, or the use of those marks.

7. Due to war restrictions plaintiff was not able to obtain any of the materials after 1942 from which the articles were made to which were attached the "Gooseskin Raingard" and "Globe Trotter Raingard" marks; the last sale of coats bearing the latter mark was made to Newman Stern Company, Cleveland, Ohio, on October 23, 1942.

8. Plaintiff, in May to September, 1944 advertised its "Gooseskin Raingard" trademark nationally, and prior to the end of the war fighting in 1945 and continuously after, plaintiff made diligent efforts to resume procurement of the rubber and cloth for producing its article. It was prevented from obtaining rubber for processing of its products until the lifting of government restrictions in September, 1947, and

after much difficulty in obtaining cloth for the purpose it succeeded in resuming production of its garments under its "Globe Trotter Raingard" mark about the middle of 1948; such production has been continuous to the date of trial.

9. Notwithstanding the fact that plaintiff was prevented from producing its said raincoats during the period stated, it continued to receive requests for them from its former customers.

10. Plaintiff never intended to abandon its trade-mark "Raingard."

11. On September 13, 1944, plaintiff filed an application in the Patent Office to register the mark "Raingard." This application was never allowed and was rejected, citing trade-mark No. 190,487, registered October 14, 1924 by Driesen, Meyer and Oronsky and No. 144,948 registered by the United States Rubber Co. on July 19, 1921 and renewed in 1941.

12. On July 19, 1921, trade-mark registration No. 144,958 was issued by the Patent Office to the United States Rubber Company for the mark "Rayngard," for waterproof and weatherproof coats, and renewed in 1941.

13. On May 7, 1945 plaintiff filed an application to cancel registration No. 144,958 registered by United States Rubber Co., covering mark "Rayngard," and when that firm failed to answer the petition of cancellation, a judgment of cancellation by default was entered and the registration ordered cancelled, on August 30, 1945.

14. On May 22, 1924, Driesen, Meyer and Oronsky applied to the Patent Office for the registration of the mark "Raingard" for use on outer suits and overcoats for men, the first use of which was alleged as on April 9, 1924.

15. On October 14, 1924, trade-mark registration No. 190,487 was issued by the Patent Office to Driesen, Meyer and Oronsky, covering the mark "Raingard."

16. Defendant, on or about July 5, 1944, obtained a document purporting to be an assignment of trade-mark registration No. 190,487 for "Raingard" from Driesen, Meyer and Oronsky, there being no consideration for such assignment, no transfer of any business with good will, or of any formula as to goods made by assignor, or of any list of customers, or of any labels owned by assignor. Defendant never used the trade-mark "Raingard" prior to obtaining this purported assignment.

17. Defendant began using the mark "Raingard" after obtaining the alleged assignment of registration No. 190,487, on July 5, 1944, and used it on an entirely different product from that of Driesen, Meyer and Oronsky.

18. The goods to which defendant applied the mark "Raingard" after July 5, 1944 were of the same descriptive properties as plaintiff's goods, namely, raincoats.

19. On or about August 30, 1944, defendant changed its corporate name from A. Starr & Co. to Raingard, Inc., and has continued the use of this name since notice given him by plaintiff.

20. Plaintiff, on or about August 31, 1944 notified defendant of plaintiff's trademark rights in the mark "Raingard" and to desist from the use of it.

21. Thereafter, A. Starr & Co., Inc., applied to the Patent Office for a renewal of trade-mark registration No. 190,487 and such renewal was granted on November 14, 1944.

22. Plaintiff, on or about May 16, 1945, filed in the Patent Office a petition to cancel defendant's alleged assigned trade-mark registration No. 190,487 and such renewal was granted on November 14, 1944.

22. Plaintiff, on or about May 16, 1945, filed in the Patent Office a petition to cancel defendant's alleged assigned trade-mark registration No. 190,487, and upon the proofs taken by the parties in this proceeding known as Cancellation No. 4573, the Commissioner of Patents on July 29, 1947 denied plaintiff's petition.

23. Defendant, on or about October 29, 1946 obtained Registration No. 425,059 under the 1920 Trade-Mark Act, 41 Stat. 533, for the mark "Raingard" for Women's Misses', Girls', Teens' and Junior Coats.

24. Plaintiff, on or about February 27, 1947 filed in the Patent Office a petition to cancel defendant's registration No. 425,059,

and this proceeding rests in abeyance pending decision in this suit.

25. Plaintiff has been in litigation with defendant in causes named above, and in this suit, since on or about May, 1945, in plaintiff's efforts to establish its trade-mark rights in the mark "Raingard," and has diligently prosecuted such litigation.

## Conclusions of Law

1. This court has jurisdiction herein upon the following grounds:

(a) This action is a suit for infringement and injunction respecting plaintiff's trade-mark notation "Raingard" used by the parties in interstate commerce, there being diversity of citizenship of the parties, and the amount in controversy exceeding the sum of $3,000 exclusive of interest and costs.

(b) This action involves a suit under Sec. 4915, R.S., 35 U.S.C.A. § 63.

(c) This action arises under the trade-mark laws of the United States including Secs. 37 and 39 of the Trade-Mark Act of 1946, 15 U.S.C.A. §§ 1119 and 1121.

2. The trade-mark notation "Raingard" is the property of plaintiff.

3. The document dated July 5, 1944 purporting to be an assignment by Driesen, Meyer and Oronsky of trade-mark registration No. 190,487 for "Raingard" was an assignment in gross and did not convey any trade-mark rights to defendant.

4. Plaintiff's cessation of use of its trade-mark notation "Raingard" was due to reasons beyond its control, and did not work an abandonment of said mark.

5. The defendant by use of the mark "Raingard" upon raincoats has infringed plaintiff's trade-mark rights.

6. Defendant does not have any ownership rights in and to the trade-mark "Raingard" for raincoats or other articles.

7. Plaintiff is entitled to an order of this court, directed to the Commissioner of Patents, to cancel trade-mark registration No. 190,487 renewed to defendant.

8. Plaintiff is entitled to an order of this court, directed to the Commissioner of Patents to cancel defendant's trade-mark

registration No. 425,059 for "Raingard," by way of rectifying the register of trade-marks, under Sec. 37 of the Trade-Mark Act, supra.

9. Plaintiff is entitled to a decree for a perpetual injunction against defendant prohibiting defendant's use of the trade-mark "Raingard," and any notation so similar to said word as would be likely to cause confusion in trade, in any way, upon raincoats or garments of any kind or sold by defendant.

10. Plaintiff is entitled to a decree for a perpetual injunction against defendant prohibiting defendant's use of the trade-mark "Raingard" in its corporate name.

A decree may be submitted on notice.